**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ARROWS UP, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:17-cv-01945 |
| | § | |
| US SILICA HOLDINGS, INC., and | § | |
| SANDBOX LOGISTICS, LLC | § | |

| | | |
|---|---|---|
| SANDBOX LOGISTICS, LLC, | § | |
| SANDY CREEK CAPITAL, LLC, and | § | |
| U.S. SILICA HOLDINGS, INC. | § | |
| | § | |
| v. | § | |
| | § | |
| ARROWS UP, LLC, ARROWS UP, INC. | § | |
| (n/k/a ARROWS UP HOLDINGS, INC.) and | § | |
| JOHN ALLEGRETTI | § | |

**SANDBOX'S MOTION TO COMPEL DOCUMENT PRODUCTION**
**FROM OMNITRAX AND SHALETECH**

BECK REDDEN LLP
  Matthew P. Whitley
  State Bar No. 24037703
  Southern District No. 33589
  mwhitley@beckredden.com
  Michael Richardson
  State Bar No. 24002838
  Southern District No. 23630
  mrichardson@beckredden.com
  Seepan Parseghian
  State Bar No. 24099767
  Southern District No. 2953872
  sparseghian@beckredden.com
1221 McKinney St., Suite 4500
Houston, Texas 77010-2010
Telephone No. (713) 951–3700
Facsimile No. (713) 951–3720

KIRKLAND & ELLIS LLP
  Gianni Cutri (*pro hac vice*)
  Illinois State Bar No. 6272109
  gcutri@kirkland.com
  Kyle M. Kantarek (*pro hac vice*)
  Illinois State Bar No. 6320889
  kyle.kantarek@kirkland.com
  Adam M. Kaufmann (*pro hac vice*)
  Illinois State Bar No. 6303658
  adam.kaufman@kirkland.com
300 North LaSalle
Chicago, Illinois 60654
Telephone No. (312) 862–3372
Facsimile No. (312) 862–2200

*Counsel for SandBox*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 2

ARGUMENTS AND AUTHORITIES .............................................................................. 4

      A.      SandBox's Subpoena Requests are Relevant to Arrows Up's Liability and Damages Theories as well as SandBox's Counterclaims for Breach of Contract. .............................................................................................................. 5

      B.      SandBox's Subpoena Requests are Narrowly Tailored in Time and Scope, and Do Not Impose an Undue Burden on OmniTRAX and ShaleTECH. ............ 10

      C.      Miscellaneous Objections .................................................................................. 12

CONCLUSION .................................................................................................................. 12

CERTIFICATE OF SERVICE ......................................................................................... 14

CERTIFICATE OF CONFERENCE ............................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*,
   117 F.R.D. 392 (N.D. Tex. 1987) ...............................................................4

*Cmedia, LLC v. LifeKey Healthcare, LLC*,
   216 F.R.D. 387 (N.D. Tex. 2003) .............................................................10

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*,
   No. 4:11-CV-1355, 2014 WL 585750 (S.D. Tex. Feb. 14, 2014) ...........................5

*Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*,
   258 F.R.D. 149 (S.D. Tex. 2009) ...............................................................5

*McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*,
   894 F.2d 1482 (5th Cir. 1990) ..................................................................5

*Merrill v. Waffle House, Inc.*,
   227 F.R.D. 475 (N.D. Tex. 2005) ..............................................................5

*Parrish v. Premier Directional Drilling, L.P.*,
   No. SA-16-CA-00417-DAE, 2017 WL 8774230
   (W.D. Tex. Mar. 1, 2017) ........................................................................5

*Rangel v. Gonzalez Mascorro*,
   274 F.R.D. 585 (S.D. Tex. 2011)...............................................................5

*S.E.C. v. Brady*,
   238 F.R.D. 429 (N.D. Tex. 2006) ...........................................................6, 10

*Wiwa v. Royal Dutch Petroleum Co.*,
   392 F.3d 812 (5th Cir. 2004) .............................................................10, 11

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................5, 6

Fed. R. Civ. P. 45 ....................................................................................4, 5

Fed. R. Civ. P. 45, cmts..............................................................................5

SandBox hereby respectfully moves to compel the production of documents from third parties OmniTRAX and ShaleTECH pursuant to SandBox's subpoenas.[1]

## INTRODUCTION

This motion concerns subpoenas to third parties closely connected to Arrows Up: (1) its parent company OmniTRAX and various OmniTRAX subsidiaries; and (2) a joint venture called ShaleTECH (in which at least one OmniTRAX entity is a member) that provides trucking services for Arrows Up customers and promotes Arrows Up products, including the containers that Arrows Up derived from SandBox's design.  During the course of discovery, SandBox became concerned that Arrows Up may be withholding information based on a theory that certain documents are technically in the possession of its parent OmniTRAX or its transportation provider ShaleTECH.  Therefore, SandBox served subpoenas on OmniTRAX and ShaleTECH entities focused primarily on categories of information Arrows Up had already agreed to produce, but which did not appear complete.  The subpoenas made clear that SandBox was not seeking duplicate production of information previously provided by Arrows Up, but only responsive documents in OmniTRAX's or ShaleTECH's possession that had not been produced.[2]

In response, OmniTRAX and ShaleTECH — which are represented by the same law firm representing Arrows Up in this case — provided no documents.  Instead, after requesting and receiving a two-week extension on their response date,[3] they served boilerplate objections.[4]  To

---

[1]   Except when necessary to distinguish a specific entity, this motion will refer to (i) SandBox Logistics, LLC, Sandy Creek Capital, LLC and U.S. Silica Holdings, Inc. as "SandBox"; (ii) Arrows Up, LLC, Arrows Up, Inc. (n/k/a Arrows Up Holdings, Inc.) and John Allegretti as "Arrows Up"; (iii) OmniAU, LLC, OmniTRAX Energy Solutions, OmniTRAX Holdings Combined, Inc., OmniTRAX Sand Holdings, LLC, and OmniTRAX, Inc. as "OmniTRAX"; and (iv) ShaleTECH Transport as "ShaleTECH."

[2]   Exs. 1-2, SandBox's Subpoenas to OmniTrax and ShaleTech dated June 17, 2019.  SandBox's subpoenas to the five OmniTrax entities identified in footnote 1 above were identical.  To avoid filing an unnecessarily voluminous exhibit, SandBox has attached one of the five OmniTrax subpoenas and the ShaleTech subpoena to this motion.

[3]   Ex. 3, Email between G. Galeoto and S. Parseghian dated July 2, 2019.

[4]   Ex. 4, OmniTRAX and ShaleTECH's Objections to SandBox's Subpoena dated July 23, 2019.

make matters worse, counsel for OmniTRAX and ShaleTECH later acknowledged in a meet-and-confer that their clients had not even looked to determine if they had responsive documents, but rather intended to simply rest on objections.[5]

OmniTRAX is certainly free to structure its web of subsidiaries and affiliates however it sees fit, but it cannot shield related entities from discovery because it does not want to participate. OmniTRAX had no qualms in orchestrating Arrows Up's filing of this lawsuit, and so it cannot complain now that it should not even have to look for documents. Accordingly, SandBox requests that the Court compel OmniTRAX and ShaleTECH to respond to its subpoenas and produce responsive documents in their possession, custody, or control.

## FACTUAL BACKGROUND

The Court is well aware of this case's history, so we will move straight to the issue at hand.[6] On June 17, 2019, SandBox served subpoenas for depositions on written questions and production of documents to OmniTRAX and ShaleTECH. The five OmniTRAX entities include Arrows Up's parent company and related affiliates within the OmniTRAX umbrella. SandBox served the same 26 requests for production on each of the five OmniTRAX entities. Several of the requests seek documents related to Arrows Up's damages theories, such as valuations of Arrows Up, licenses and royalties paid or received, financial projections of Arrows Up, or market analysis.[7] Others ask for documents relevant to Arrows Up's liability theories, such as opinions of counsel, internal communications regarding the asserted patents and accused products, or the termination of former Arrows Up CEO John Allegretti (who was found liable for fraud, along with Arrows Up, in the

---

[5] Ex. 5, Letter from S. Parseghian to G. Galeoto dated Aug. 1, 2019. Tellingly, counsel did not deny that this was the case in her response, instead adhering to the same blanket assertions that OmniTRAX and ShaleTECH were "standing on [their] objections." Ex. 6, Letter from G. Galeoto to S. Parseghian dated Aug. 2, 2019.

[6] *See* Dkt. 106 at 1-6.

[7] *See, e.g.*, Ex. 1 at RFP Nos. 1-10, 15-17, 21, and 25-26.

state court case).[8]  Other requests focused on SandBox's counterclaims, requests for documents reflecting the purpose or motivation for obtaining the Asserted Patents, communications with the Edelman public relations firm discussing the instant suit,[9] and documents related to any reverse engineering or analysis of the Accused Products by Arrows Up or OmniTRAX.[10]

SandBox also subpoenaed ShaleTECH due to its relevance to Arrows Up's damages model.  Arrows Up's damages expert applied a reasonable royalty to SandBox's revenues earned not only from the lease of its containers and related equipment set, but also from last-mile transportation services to carry the SandBox containers.  Arrows Up's expert included SandBox's transportation revenue in his royalty base even though Arrows Up generally does not offer a similar service to its customers as part of its own products and services in frac sand logistics.  Instead, Arrows Up relies on ShaleTECH, a joint venture formed in Fall 2018 to provide last-mile transportation for Arrows Up's customers.   SandBox's requests to ShaleTECH thus seek documents related to the formation of ShaleTECH, contracts and agreements between ShaleTECH and Arrows Up or OmniTRAX, contracts between ShaleTECH and its customers involving the transportation of Arrows Up's bins, ShaleTECH's financials and marketing materials, and any documents and communications referencing SandBox in the context of the instant lawsuit.[11]

SandBox asked OmniTRAX and ShaleTECH to respond to the subpoenas by July 9, 2019, and it then granted their request for a two-week extension until July 23.[12]  But OmniTRAX and

---

[8]    *See, e.g.*, *id.* at RFP Nos. 8, 11-14, 18-21.

[9]    Arrows Up and OmniTRAX engaged Edelman prior to filing the instant lawsuit to devise and implement a public relations strategy designed to pressure SandBox into settling the State Court Case.  *See* Dkt. #52 at ¶¶ 164-174, Exs. B-C.

[10]    *See, e.g.*, Ex. 1 at RFP Nos. 11, 18, 22-24.

[11]    Ex. 2 at RFP Nos. 1-12.

[12]    Ex. 3.

ShaleTECH served nothing but objections.  These objections can be grouped into three general categories: (1) relevance; (2) overbreadth and undue burden; and (3) miscellaneous objections such as to production of confidential or proprietary information.

On July 31, 2019, counsel for SandBox conferred via telephone with counsel for OmniTRAX and ShaleTECH (and also Arrows Up).  Yet there was no meaningful conference about the scope of document production.  Counsel for OmniTRAX and ShaleTECH was neither prepared to discuss specific requests nor able to state whether their clients were withholding responsive documents.  Instead, they said that OmniTRAX and ShaleTECH had not even attempted to search for responsive documents due to an alleged "undue burden on our clients."[13] It quickly became obvious that OmniTRAX and ShaleTECH had no intention of negotiating, and their counsel later confirmed that "we could go through each of the requests, but . . . my response would be the same—we are standing on our objections."[14]

As a result of OmniTRAX and ShaleTECH's refusal to cooperate, SandBox was forced to file the instant motion and seek appropriate relief from the Court.

## <u>ARGUMENTS AND AUTHORITIES</u>

"The only appropriate means to compel a non-party . . . to produce documents is to serve them a subpoena." *In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985*, 117 F.R.D. 392, 393 (N.D. Tex. 1987) (citing FED. R. CIV. P. 45).  The burden is then on the "party who opposes its opponent's request for production to show *specifically* how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (quoting *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*,

---

13    Ex. 6.

14    *Id*.

4

894 F.2d 1482, 1485 (5th Cir. 1990)) (emphasis added). Boilerplate objections are not acceptable; rather, specific objections are required. *See Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009) (in context of Rule 34 request); FED. R. CIV. P. 45, cmts. (extending obligations imposed by Rule 34 on non-parties pursuant to Rule 45).

OmniTRAX and ShaleTECH have lodged several boilerplate objections to SandBox's subpoena requests that can be grouped into three categories: (1) relevance; (2) overbreadth and undue burden; and (3) miscellaneous objections. These generic objections are meritless.

**A.      SandBox's Subpoena Requests are Relevant to Arrows Up's Liability and Damages Theories as well as SandBox's Counterclaims for Breach of Contract.**

Rule 26 establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . .. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2014 WL 585750, at *3 (S.D. Tex. Feb. 14, 2014); *see also Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (noting that "[t]he threshold for relevance at the discovery stage is lower than at the trial stage"); *Parrish v. Premier Directional Drilling, L.P.*, No. SA-16-CA-00417-DAE, 2017 WL 8774230, at *2 (W.D. Tex. Mar. 1, 2017) ("Courts construe discovery rules liberally to serve the purposes of discovery: providing the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement.") (citation omitted). "Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed." *S.E.C. v.*

*Brady*, 238 F.R.D. 429, 436-37 (N.D. Tex. 2006).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Id.*

SandBox's requests easily clear this hurdle.  SandBox's requests to OmniTRAX are directly relevant to (i) Arrows Up's damages model; (ii) Arrows Up's infringement claims; and (iii) SandBox's counterclaims for breach of the NDA and Settlement Agreement.  For example, SandBox has sought the following documents that relate to Arrows Up's reasonable royalty and lost profits models:[15]

1. Any valuations of Arrows Up.

2. Any documents and communications relating to any attempts to sell Arrows Up.

3. Any documents and communications relating to the termination or decision to terminate John Allegretti.

4. Any documents and communications relating to any loans OmniTRAX has made to Arrows Up, John Allegretti, or any business associated with Arrows Up or John Allegretti (including but not limited to Sutton, Inc.).

5. Any documents and communications relating to the determination or evaluation of the financial terms of the Mutual Release.

6. Any documents and communications relating to OmniTRAX's determination of the consideration to pay for John Allegretti's five percent interest in Arrows Up, as reflected in the Mutual Release and Consulting Agreement.

7. Any financial projections or models regarding Arrows Up.

8. Any market research or analysis performed by or provided to OmniTRAX regarding Arrows Up.

9. Any agreements between ShaleTECH and Arrows Up and/or OmniTRAX.

10. Any documents and communications between OmniTRAX and Arrows Up regarding the formation of the ShaleTECH joint venture.

---

[15]   Ex. 1.

15.   Any documents relating to any valuation, appraisal, or estimate of the value of the Asserted Patents, including any valuation prepared in connection with any investment in or acquisition of Arrows Up or Arrows Up's assets.

16.   Any documents and communications relating to any planned, contemplated, proposed or requested, or actual licensing of the Asserted Patents, including any patent license agreements.

17.   Documents and communications sufficient to determine the royalties or other consideration paid or money received under any licenses, assignments, grants, marketing or co-branding agreements or other agreements entered into by Arrows Up involving any of the Asserted Patents or the technology described therein.

21.   Any documents, including any summary reports, of the costs and expenses associated with the sale, marketing, or manufacture of any Frac Sand Container.

25.   Documents sufficient to identify the number and location of Frac Sand Containers or other products and services covered by the Asserted Patents that are transported by ShaleTECH.

26.   Any agreements relating to ShaleTECH providing services in connection with Frac Sand Containers offered to customers by Arrows Up or OmniTRAX.

SandBox asked for the following documents relevant to infringement theories:[16]

11.   Any documents relating to the decision to commence litigation asserting infringement by SandBox of the Asserted Patents.

12.   Any documents and communications relating to any patentability, validity, enforceability, or infringement opinions regarding the Asserted Patents, including copies of any such opinions.

13.   Any communications between OmniTRAX and any third parties regarding SandBox, the Asserted Patents, the Accused Products, this Action or any other legal proceeding between SandBox and Arrows Up.

14.   Any internal communications within OmniTRAX regarding SandBox, the Asserted Patents, the Accused Products, this Action or any other legal proceeding between SandBox and Arrows Up.

18.   Any documents and things related to any reverse engineering or analyses of the Accused Products by or on behalf of Arrows Up and/or OmniTRAX, including any testing, evaluation, analysis, or assessments that led to your conclusion that each Accused Product infringes any claim of the Asserted Patents.

19.   Documents sufficient to identify any entities or persons that have a financial interest, whether direct or indirect, in the outcome of this Action and the extent of each such financial interest.

---

16   Ex. 1.

20. Any documents and communications concerning or referencing the acquisition of Arrows Up by OmniTRAX, Inc., to the extent such documents or communications relate to the Asserted Patents, Arrows Up technology described in the Asserted Patents, SandBox, the Accused Products, this Action, or any other legal proceeding between SandBox and Arrows Up, including any documents and communications related to assessment or valuation of any of the foregoing.

SandBox also requested documents germane to its breach-of-contract counterclaims:[17]

11. Any documents relating to the decision to commence litigation asserting infringement by SandBox of the Asserted Patents.

18. Any documents and things related to any reverse engineering or analyses of the Accused Products by or on behalf of Arrows Up and/or OmniTRAX, including any testing, evaluation, analysis, or assessments that led to your conclusion that each Accused Product infringes any claim of the Asserted Patents.

22. Any communications involving Arrows Up, OmniTRAX and/or Edelman regarding, referencing, discussing, or related to this Action or any other legal proceeding between SandBox and Arrows Up.

23. Any communications involving Arrows Up, OmniTRAX and/or Edelman relating to press releases or other public communications, including but not limited to e-mails to securities analysts or other third parties, about SandBox, SandBox's intellectual property, this Action, or any legal proceeding between SandBox and Arrows Up.

24. Documents and communications that evidence or reflect the purpose, reason, or motivation for obtaining the Asserted Patents.

Similarly, SandBox's requests to ShaleTECH are relevant in light of Arrows Up's damages expert's inclusion of SandBox's trucking revenue in calculating a reasonable royalty.[18]  In order to assess the propriety and accuracy of Arrows Up's inclusion of trucking revenue in its royalty base, SandBox is entitled to discover documents relating to the formation of ShaleTECH, its revenues and costs, and customer contracts, among other issues, as seen in the following requests:[19]

---

[17]  Ex. 1.

[18]  *See supra* at 3.

[19]  Ex. 2.

1. All documents and communications between Arrows Up and ShaleTECH regarding the formation of the ShaleTECH joint venture.

2. All documents and communications between OmniTRAX and ShaleTECH regarding the formation of the ShaleTECH joint venture.

3. Documents sufficient to identify the members of the ShaleTECH joint venture.

4. All agreements and contracts between ShaleTECH and Arrows Up and/or OmniTRAX.

5. All ShaleTECH corporate documents, including but not limited to operating agreements, articles of incorporation, bylaws, board minutes, and other applicable documents.

6. All contracts between ShaleTECH and its customers relating to the transportation of Arrows Up's bins.

7. All documents and communications mentioning or relating to SandBox.

8. Documents sufficient to show the prices ShaleTECH charges its customers for the services it provides related to the transportation of Arrows Up bins.

9. Documents sufficient to show ShaleTECH's costs, revenue, and profits relating to the transportation of Arrows Up's bins, including but not limited to ShaleTECH's profit and loss statements, income statements, and balance sheets.

10. ShaleTECH's marketing documents, including presentations to potential customers, price quotes, graphics, advertisements, brochures, and other forms of marketing.

11. All documents and communications relating to the press releases issued by ShaleTECHthat mention Arrows Up or Arrows Up-SandBox litigation.

12. All documents or communications relating to the decision to put press releases regarding Arrows Up and/or the Arrows Up/SandBox litigation on ShaleTECH's website.

The relevance of SandBox' requests to OmniTRAX and ShaleTECH is not controversial, as Arrows Up has already provided some (but apparently not all) of these documents. Yet OmniTRAX and ShaleTECH have raised blanket relevance objections to the point of absurdity. For example, in response to Request No. 17 seeking "documents and communications sufficient to determine the royalties . . . paid or money received under any licenses . . . involving any of the Asserted Patents," OmniTRAX objected "because this request is not relevant."[20]   Bizarre

---

[20]   Ex. 4 at OmniTRAX's Response to RFP No. 17.

assertions like this are the natural consequence of asserting boilerplate objections to every request. Furthermore, Arrows Up's own damages expert conducted and relied on interviews with several OmniTRAX employees, including those involved in finance, business development, and formation of the ShaleTECH venture. They cannot assert now that requests for information from these exact same OmniTRAX departments are irrelevant.

We could address the requests one-by-one (and will do so in a hearing if the Court desires), but there is no need to belabor the point here. OmniTRAX and ShaleTECH bear the burden of proof on their objections, and they cannot dispute the relevance of the requested information.

**B.**     **SandBox's Subpoena Requests are Narrowly Tailored in Time and Scope, and Do Not Impose an Undue Burden on OmniTRAX and ShaleTECH.**

A mere statement that a discovery request is burdensome is not adequate to voice a successful objection; the objecting party must make a specific, detailed showing of how a request is burdensome. *Brady*, 238 F.R.D. at 437. Courts consider the following factors: (1) relevance of the information requested; (2) need of the party for the documents; (3) breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Id.* (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). Another factor considered is whether the subpoena was issued to a nonparty to the litigation and the expense and inconvenience of compliance to the nonparty. *Id.* The Court must then balance the need and relevance of the discovery against the harm, prejudice, or burden to the responding party. *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003).

OmniTRAX and ShaleTECH's objections of undue burden are baseless. First and foremost, both subpoenaed parties have wholly failed to make any showing of ***why*** responding to SandBox's RFPs would be unduly burdensome. Neither complains that compliance would be too

costly or time consuming — they simply make a boilerplate objection.[21] Thus, OmniTRAX and ShaleTECH's "undue burden" objection should be overruled for that reason alone.

OmniTRAX and ShaleTECH's "undue burden" objection also fails pursuant to the *Wiwa* factors enumerated above. *First*, as previously explained, SandBox has shown that its requests are relevant. *Second*, the subpoenaed parties do not argue anywhere in their objections that SandBox does not need the documents requested. Indeed, SandBox needs the documents it is seeking in order to adequately defend against Arrows Up's damages theories and discover facts germane to SandBox's counterclaims for breach of contract.

*Third*, SandBox's requests are narrowly tailored in their scope to relevant issues (in fact, during the parties' meet and confer, OmniTRAX and ShaleTECH were unable to explain their basis for raising an "overbroad" objection for any single request). *Fourth*, OmniTRAX and ShaleTECH are flat wrong when they object that SandBox's requests are not limited in time. SandBox only seeks documents from OmniTRAX from the Fall of 2016 (when it acquired Arrows Up) to the present, and from ShaleTECH from the Fall of 2018 (when it was formed) to the present. These clearly defined and reasonable periods of time are sufficiently narrow in scope.

*Fifth*, in perhaps the most telling demonstration of their stonewalling, the subpoenaed parties repeatedly object to the definitions of the parties to this lawsuit, the subpoenaed parties, and the term "Frac Sand Container" as overbroad—all without explaining the specific basis for their objection. They even claim not to know what "Edelman" means, even though OmniTRAX **hired and worked with the Edelman public relations firm to (unsuccessfully) pressure SandBox to settle the state court case**. These objections are frivolous and cannot stand.

*Sixth*, OmniTRAX and ShaleTECH also raise the objection that SandBox has failed to seek

---

[21]  *See generally* Exs. 4 and 6.

the requested documents by less burdensome means, although they never specify what those means might be.  More generally, OmniTRAX and ShaleTECH's objection misses the point.  SandBox issued these subpoenas because it sought documents in OmniTRAX and ShaleTECH's possession that Arrows Up has not already produced.  By definition, the documents requested, such as valuations and financial projections of Arrows Up conducted by OmniTRAX, or ShaleTECH's customer contracts and financials, would *only* be in OmniTRAX's, ShaleTECH's or Arrows Up's possession.  Therefore, the burden on OmniTRAX and ShaleTECH to conduct a reasonable search of their records for discrete categories of documents and communications over a limited period of time is far too low to sustain an "undue burden" objection.

### C.    <u>Miscellaneous Objections</u>

Finally, OmniTRAX and ShaleTECH raise miscellaneous objections to various requests including on the basis of privilege or the production of confidential information.  These objections are also erroneous and cannot stand.  To the extent responsive documents are privileged, they can be logged instead of produced.  To the extent they contain confidential information, they can be designated as Confidential or Attorneys' Eyes Only under the protective order in this case.  These boilerplate objections are no justification for refusing to participate in discovery.

<u>CONCLUSION</u>

For the foregoing reasons, SandBox requests that the Court grant its motion to compel and order OmniTRAX and ShaleTECH to fully respond to SandBox's subpoenas and produce all non-duplicative documents responsive to SandBox's document requests.  Pursuant to Local Rule 7.5.A, SandBox also requests oral argument on its motion if the Court would find it helpful.  In addition, pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure, SandBox further moves the Court to require OmniTRAX and ShaleTECH to pay SandBox's reasonable expenses incurred in preparing and filing this motion, including SandBox's reasonable attorneys' fees.

Dated: August 16, 2019

Respectfully submitted,

BECK REDDEN LLP

/s/ Matthew P. Whitley
_____

 Matthew P. Whitley
 State Bar No. 24037703
 Southern District No. 33589
 mwhitley@beckredden.com
 Michael Richardson
 State Bar No. 24002838
 Southern District No. 23630
 mrichardson@beckredden.com
 Seepan Parseghian
 State Bar No. 24099767
 Southern District No. 2953872
 sparseghian@beckredden.com
 1221 McKinney St., Suite 4500
 Houston, Texas 77010-2010
 Telephone No. (713) 951–3700
 Facsimile No. (713) 951–3720

KIRKLAND & ELLIS LLP
 Gianni Cutri (*pro hac vice*)
 Illinois State Bar No. 6272109
 gcutri@kirkland.com
 Kyle M. Kantarek (*pro hac vice*)
 Illinois State Bar No. 6320889
 kyle.kantarek@kirkland.com
 Adam M. Kaufmann (*pro hac vice*)
 Illinois State Bar No. 6303658
 adam.kaufman@kirkland.com
 300 North LaSalle
 Chicago, Illinois 60654
 Telephone No. (312) 862–3372
 Facsimile No. (312) 862–2200

**ATTORNEYS FOR SANDBOX**

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 16, 2019, the foregoing document was filed electronically and served upon known counsel for Arrows Up via the Court's CM/ECF system.

By: */s/ Matthew P. Whitley*
Matthew P. Whitley

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for SandBox, Messrs. Parseghian and Kaufmann, met and conferred on July 31, 2019 via telephone as well as on August 1-2, 2019 via written correspondence with counsel for OmniTRAX and ShaleTECH, Ms. Gemma Galeoto. It is SandBox's understanding that OmniTRAX and ShaleTECH stand by their objections to SandBox's subpoenas, and thus, the parties have been unable to reach agreement.

By: */s/ Seepan V. Parseghian*
Seepan V. Parseghian